UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:17-CV-00077-HBB

GUYWANNA BROWN                                                                      PLAINTIFF

VS.

TRUSTGUARD INSURANCE COMPANY
and ASSURED PARTNERS NL, LLC                                                     DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court are motions for summary judgment filed by each of the parties. Plaintiff Guywanna Brown's motion for summary judgment is filed at DN 35. Defendant Trustgard[1] Insurance Company's motion is filed at DN 36 and Defendant Assured Partners NL, LLC is filed at DN 37. Responses (DN 39, 40, 41) and replies (DN 43, 44, 45) have been filed as to each dispositive motion. Because the motions are related, this order addresses all three.

Nature of the Case

Plaintiff Guywanna Brown and her husband Mike Brown were insured under a policy of automobile insurance issued by Trustgard and serviced by the Assured agency. Their friend Andy Perkins worked for a competitor agency and they decided to purchase a policy through him to replace the Trustgard policy. On September 17, 2015 Mr. Brown spoke with an agent at Assured and advised her they wished to cancel the Trustgard policy.[2] On September 25, 2015

---

[1] Although the Plaintiff's pleadings and the style of this case identify the defendant as "Trustguard," the Defendant's pleadings and the insurance policy demonstrate the proper spelling is "Trustgard."

[2] A chronological listing of events relevant to the case is attached as Appendix A.

Assured e-mailed the Browns a cancellation request form for their signature. The request form listed September 17, 2015 as the effective date of cancellation.

The Browns did not immediately return the cancellation form, and Trustgard continued to debit the Browns' bank account for monthly premiums. Because Assured had not received the cancellation form back from the Browns, the agent sent Mr. Brown an e-mail advising him that Assured was still awaiting the return of the form and attached another form. Mr. Brown has testified that he failed to note that Trustgard was continuing to deduct premium payments from his bank account and did not know if he received either of Assured's e-mails to him. When the policy reached its expiration date, Trustgard issued a renewal policy and continued to automatically debit the Browns' bank account for the renewal policy monthly premiums.

Mr. Brown eventually called Assured to inquire about the status of his premium refund. He was advised he needed to return the cancellation request and Assured sent a third copy of the form, this time by postal mail. Mr. Brown signed the cancellation request form and sent it to Assured on May 11, 2016, over seven months after initially notifying Assured that he wished to cancel the policy. As with the first form Assured sent him, the form Mr. Brown signed designated September 17, 2015 as the effective date of cancellation.

On May 19, 2016, nine days after Mr. Brown signed and sent the cancellation request form to Assured, Mrs. Brown was injured in a motor vehicle accident. The parties dispute whether Mr. Brown notified Assured of the accident at that time. On May 24, 2016 an Assured agent signed the cancellation request form and forwarded it on to Trustgard. Trustgard required verification that the Browns had secured replacement coverage before it would agree to backdate the cancelation as indicated on the cancellation request. Trustgard received verification from Assured on May 27, 2016, issued a notice of cancelation as of February 12, 2016 and mailed a

refund check to the Browns. Trustgard issued a second notice of cancellation on June 7, 2016 with an effective date of September 23, 2015 and mailed another refund check to the Browns. The two cancellation notices and different effective dates were because both the original and renewal policies were canceled. (DN 37-10, Emily Foster depo., p. 9, Tr. p. 35). Mrs. Brown subsequently sought underinsured motorist benefits under the Trustgard policy for injuries sustained in the May 19, 2016 accident. Trustgard denied her claim on the basis that the policy was cancelled prior to the date of the accident.

The Browns brought this action against Trustgard for a declaration that the policy of insurance was effective on the date of Mrs. Brown's accident and that she is entitled to underinsured motorist coverage. The Browns' claims against Assured sound in negligence in the handling of their cancellation request.

<u>Motions for Summary Judgment</u>

Both the Plaintiff and Trustgard move for summary judgment on the issue of whether the Trustgard policy of insurance was in effect on the date of Plaintiff's accident. Assured joins in Trustgard's position, making essentially the same arguments.

Plaintiff advances four arguments in support of her position that the policy was in effect at the time of the accident. First, she contends that, although Mr. Brown had submitted the written request to cancel the policy before Mrs. Brown's accident, Trustgard did not process the request and issue a notice of cancelation until after the accident, thus there was no meeting of the minds between the parties that the policy would be cancelled until after Trustgard's liability under the policy vested.

Plaintiff's second argument is that KRS 304.20-030 prohibits retroactive cancellation of an automobile insurance policy after an accident has occurred. Plaintiff's third argument looks

to language in the policy regarding Trustgard's obligation to provide notice in advance of any cancellation. Her fourth argument is a similar one, this time looking to Trustgard's internal policy requiring advance notification before cancelling a policy.

Trustgard's arguments are the inverse of Plaintiff's. Trustgard contends that cancellation of the policy was effective as of Mr. Brown's execution of the written cancelation request, which specifically set forth an effective date of cancelation. Trustgard also points to Mr. Brown's testimony that it was never his intention to carry duplicate insurance coverage and he intended no overlap between the Trustgard policy and the replacement policy he obtained from Safeco.

As Plaintiff's claims against Assured sound in negligence, Assured's motion for summary judgment contends that the evidence in the case demonstrates that it did exactly what the Browns asked it to do, namely secure cancellation of the Trustgard policy.

Discussion

A. <u>Summary Judgment Standard</u>

To grant a motion for summary judgment, the Court must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying the basis for its motion and the parts of the record that demonstrate an absence of any genuine issue of material fact. *See* <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The Court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Patton v. Bearden</u>, 8 F.3d 343, 346 (6th Cir. 1993) (*quoting* <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-52 (1986)). The evidence, all facts, and inferences that may be drawn from the facts must be viewed in the light most favorable to the nonmovant. *See* <u>Matsushita Elec. Indus. Co. v. Zenith</u>

Radio Corp., 475 U.S. 574, 587 (1986). Once the moving party shows there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Phillip Morris Cos., 8 F.3d 335, 339-40 (6th Cir. 1993).

"When faced with cross motions for summary judgment, a district court is authorized to 'assume the there is no evidence which needs to be considered other than that which has been filed by the parties.' However, the standards upon which the court evaluates the motions for summary judgment do not change. Instead, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" Carolina Cas Ins. Co. v. KLLM, Inc., No. 3:00-CV-199-S, 2001 U.S. Dist. LEXIS 11245, *4 (W.D. Ky. Aug. 1, 2001) (citations omitted).

Where, as here, summary judgment involves interpretation of a contract, "a contract can be interpreted by the court on summary judgment if (a) the contract's terms are clear, or (b) the evidence supports only one construction of the controverted provision, notwithstanding some ambiguity." Gencorp, Inc. American Int'l Underwriters, 178 F.3d 804, 818 (6th Cir. 1999).

B. <u>Plaintiff's argument that KRS 304.20-030 prohibits backdating of the cancellation.</u>

KRS 304.20-030, titled "Retroactive annulment of liability policies prohibited" provides as follows:

> No insurance contract insuring against loss or damage through legal liability for the bodily injury or death by accident of any individual, or for damage to the property of any person, shall be retroactively annulled by any agreement between the insurer and insured after the occurrence of any such injury, death, or damage for which the insured may be liable, and any such annulment attempted shall be void.

5

Plaintiff argues this statute precludes Trustgard's retroactive cancellation of the insurance policy because it is one "insuring against loss or damage through legal liability for the bodily injury or death by accident of any individual, or for damage to the property of any person."

Trustgard responds by noting that the statutory prohibition only extends to instances in which an injury, death or damage has occurred "for which the insured may be liable." This, Trustgard contends, means the prohibition speaks to instances of third party claims. Mrs. Brown's claim under the policy for underinsured motorist benefits would be a first-party claim by an insured.

The undersigned agrees with Trustgard's argument. The intention of KRS 304.20-030 is to protect innocent third-parties from being deprived of the benefits of statutorily mandated liability coverage. "[W]e conclude that the compulsory automobile statutes, when read together, abrogate the right of an insurer to rescind automobile liability insurance so as to deny recovery *to an innocent third-party claimant*." National Ins. Ass'n v. Peach, 926 S.W.2d 859, 863 (Ky. App. 1996) (emphasis added). UIM coverage is optional and not compulsory under Kentucky law. Ward v. Nationwide Assur. Co., No. 2012-CA-000809-MR, 2014 Ky. App. Unpub. LEXIS 1006, at *13-14 (Ky. App. Dec. 24, 2014).

This interpretation is supported by the language of the statute, which specifies that the prohibition against retroactive cancellation of coverage only applies to accidents "for which *the insured* may be liable" (emphasis added). Here Mrs. Brown is the insured under the Trustgard policy. Mrs. Brown was the operator of her insured vehicle (DN 35-4, p. 5). Mrs. Brown cannot be liable to herself under UIM coverage.

C. <u>Plaintiff's argument that Trustgard's internal policy required twenty days advance notice of cancellation.</u>

Plaintiff has attached as an exhibit to her motion Trustgard's internal policies regarding cancellation (DN 35-5) and directs attention to the portion regarding cancellation of Kentucky automobile policies after the initial underwriting period. The internal policy requires that notice of cancellation must be given "14 + 5 days for nonpayment; 20 + 5 days for all other reasons" (DN 35-5, p. 11). She argues that Trustgard's internal policy thus required it to give her at least 20 days advance notice before any policy cancellation could be effective.

Trustgard argues in response that the notice requirement only speaks to instances in which Trustgard has elected to involuntarily cancel a contract. The undersigned concurs. Reviewing the internal policy as a whole, it addresses reasons why Trustgard may elect to unilaterally terminate an insurance policy. These include non-payment of premiums, suspension of an insured's driver's license, discovery of fraud or misrepresentation in procuring the policy or invalidity of a policy by decision of the Insurance Commissioner (<u>Id.</u>). The internal policy is silent as to matters involving an insured's unilateral decision to cancel the policy. It is illogical to read the internal policy as requiring Trustgard to give an insured twenty days notice of a cancellation when the insured has requested termination. Certainly, Trustgard cannot compel an insured to continue to maintain insurance coverage for an additional twenty days after requesting cancellation.

D. <u>Plaintiff's argument that the insurance policy requires advance notice of cancellation.</u>

Plaintiff makes a similar argument with reference to language in the insurance policy. She directs attention to the policy provision which provides:

> 2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in the policy:

   a. at least 14 days notice if cancellation is for nonpayment of premium; or

   b. at least 20 days notice in all other cases, including if notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy."

(DN 35-2, p. 53).

  As with Trustgard's internal policy, she argues that the insurance policy required Trustgard to give her at least twenty days notice in advance of any policy cancellation. Her argument ignores the existence of the policy provision immediately preceding the one she quotes, which provides:

  1. The named insured shown in the Declarations may cancel by:

   a. returning this policy to us; or

   b. giving us advance notice of the date cancellation is to take effect.

(Id.).

  This policy provision appears standard in nature. "A cancellation provision not infrequently found in liability insurance policies is to the effect that the policy may be cancelled by the insured by mailing to the insurer written notice stating 'when thereafter such cancellation shall be effective.' Generally speaking, a notice in order to comply with such cancellation provision must under all circumstances contain a definite date on which the cancellation shall become effective." Partin v. United Services Auto. Ass'n, 379 S.W.2d 741, 743 (Ky. App. 1964) (*quoting* 29 Am.Jur. 751 (Insurance, § 402)).

  The policy clearly differentiates between cancellation which is the unilateral decision of the insured and cancellation which is the unilateral decision of the insurer. In instances such as this where the decision to cancel is the insured's, the duty lies with the insured to return the

policy or give notice to the insurer of when the insured desires cancellation to be effective. The policy imposes no reciprocal duty on the insurer to give notice under this circumstance.

    E. <u>When the policy should be deemed cancelled.</u>

There are three points in time when the policy of insurance might be deemed cancelled. If the cancellation was effective when Mr. Brown signed and mailed the cancellation request to Assured for forwarding to Trustgard, cancellation would predate the accident. Likewise, if cancellation was effective as of the backdated date which Mr. Brown requested, it would predate Mrs. Brown's accident. However, if cancellation was not effective until the date when Trustgard received notice of the insured's request for cancellation, without validating the backdating of the cancellation, then coverage would have been in place at the time of Mrs. Brown's accident.

The parties do not dispute that Mr. Brown called Assured and advised the agent that he wished to cancel his policy of insurance with Trustgard. The Plaintiff has not taken issue with Trustgard's contention that Assured sent Mr. Brown a cancellation request form noting the date of his call to Assured as the effective date of cancellation. The parties do not dispute that Mr. Brown signed and mailed an identical form to Assured on May 11, 2016. The parties also agree that the form reflects a "cancellation date" of September 17, 2015, the date upon which Mr. Brown originally contacted an agent at Assured and advised that he wished to cancel the Trustgard policy. He has made clear in his testimony that he did not intend to have overlapping coverage under both the Safeco and Trustgard policies.

> Q. When you first asked your agent to cancel the [Trustgard] policy, you intended to have one auto insurance policy covering those vehicles, right?
>
> A. Yes.
>
> Q. And you were purchasing other coverage at the time in September 2015, right?

9

> A. Yes.
>
> Q. And that was from a Liberty Mutual affiliate called Safeco; does that sound right?
>
> A. That's correct.
>
> Q. Was there ever a time after you first asked your agent to cancel the Grange policy that you ever intended to have two auto policies covering those vehicles?
>
> A. No.

(DN 37-8, Mike Brown depo., p. 3, Tr. p. 6, ln. 18-p. 7, ln. 7).

> Q. All right. And you wanted the cancelled policy – you wanted the [Trustgard] policy to be cancelled at the same time period that the Liberty policy commenced so that you didn't have to pay for two policies?
>
> A. Yes.

(Id. at p. 3, Tr. p. 9, ln. 8-13).

> Q. All right. After you mailed the form in –
>
> A. Okay.
>
> Q. – was there ever a time when you changed your mind and you did not want a cancellation date that was commensurate with the start date of your Liberty policy?
>
> A. No.

(Id. at p. 4, Tr. p. 10, ln. 25-p. 11, ln. 5).

Moreover, while the parties disagree over whether Mr. Brown reported the accident to Assured, the Plaintiffs have not presented any evidence that Mr. Brown ever indicated to Assured that he wished to retract the request to cancel the Trustgard policy.

10

1. <u>Whether retroactive cancellation of the policy is effective to deny coverage.</u>

Plaintiff argues that the cancellation could not have been effective until there was a "meeting of the minds" between the parties to the contract, which did not take place until after the accident. She cites <u>Conservative Life Ins. Co. v. Hutchinson</u>, 52 S.W.2d 709 (Ky. 1932) for the proposition that a meeting of the minds is essential for the parties to cancel a policy of insurance. In that case, the court held that "[t]o rescind a contract by mutual consent, there must be a meeting of the minds of the parties to it the same as in the making of the contract. Like other contracts, a policy of insurance may be canceled, rescinded, or terminated at any time by mutual agreement and consent of the parties to it." <u>Id.</u> at 711 (citations omitted). Plaintiff argues that, because Trustgard did not decide to cancel the coverage until after her accident, there had been no meeting of the minds as of the date of the accident. In this regard Plaintiff relies upon the testimony of Trustgard's underwriter Patrick Dodd, who testified that it was not until May 27, 2016, after receiving verification of the Safeco replacement policy, that he concluded cancellation with backdating would be permissible.

Trustgard responds that there was mutual consent between the parties for cancelling the policy. This is demonstrated, Trustgard contends, by the actions of Trustgard, and Assured as its agent, in providing Mr. Brown with a form for requesting cancellation and following up with two more forms when he did not return the initial form. Consent was further demonstrated by the processing of the cancellation request and issuance of the premium refund checks.

Under the terms of the policy, "[c]overage will cease on the effective date of cancellation" (DN 36-2, p. 53). Once an insured specifies an advance date for cancellation of the policy, Trustgard is without discretion and must cancel the policy as of that date. The insurance policy does not, however, give Mr. Brown a unilateral right to cancellation as of a date preceding

his giving notice. Here, Mr. Brown's cancellation request went beyond the right to unilaterally cancel the policy because it specified a retroactive date, rather than an advance date. Thus, any agreement to backdate the cancellation would require mutuality. It appears from Mr. Dodd's testimony that the decision upon which he was called to make was not whether Trustgard would cancel the policy, but whether it would honor Mr. Brown's request to backdate the cancellation. Mr. Dodd testified that he required verification of replacement coverage before he could decide whether to "wipe out the backdate request." Only after he received verification that the Browns had indeed procured replacement coverage could he agree that the cancellation would be backdated (Dodd depo., DN 47-1, p. 30-36).

> Q. Would Trustgard have canceled it with the backdating if - - without receiving proof of the replacement policy?
>
> A. I was not in a position to cancel the policy without further documentation.
>
> Q. And what would that further documentation be?
>
> A. That further documentation would be a copy of the duplicate policy or duplicate coverage confirming that they had coverage elsewhere.

(Id. at p. 35, ln. 18-p. 36, ln. 3).

Blake Ayers, a Sales Executive Producer for Assured, explained that proof of replacement coverage was necessary to determine if the insured was entitled to a refund of premiums for the time during which duplicate coverage had been in place. The cancellation request form Mr. Brown submitted indicated September 17, 2015 as the backdated termination date. When Trustgard agreed to backdate, it only did so to September 23, 2015 (DN 37-9, p. 9-11). Mr. Ayers reasoned that this was because the proof of replacement insurance demonstrated that the Safeco policy was issued on September 23, and that Trustgard could not refund a

premium for the period of time when it had the only coverage in place (Id. at p. 10, Tr. p. 37, ln. 5-p. 11, ln. 3). Because Trustgard had discretion whether to agree to backdate the policy cancellation, and because it did not exercise this discretion until after Mrs. Brown's accident, the undersigned concludes that there was not a meeting of the minds on backdating the policy cancellation before the accident. See Fidelity Mut. Life Ins. Co. v. Heltsley, 71 S.W.2d 1017, 1018-19 (Ky. 1934) (Where life insurance policy did not give insured unilateral right to surrender policy for net cash value where there was no default in the payment of premiums, meeting of the minds was required, and policy was not cancelled until consent given by insurer).

2. Whether the policy was cancelled when Mr. Brown executed the cancellation request or not until it was received by either Assured or Trustgard.

While the backdating decision was made after the date of the accident, Mr. Brown executed the formal notice of cancellation before the accident. As noted earlier, the policy establishes two mechanisms whereby the insured may terminate the policy by either returning it to the insurer or by giving the insurer advance notice of the date upon which coverage is to terminate. Neither mechanism contemplates the need for any agreement by the insurer on receiving notice of the insured's intent. The contract therefore gives the insured a unilateral right of cancellation.

> Cancellation at the request of the insured is commonly provided in the terms of the policy and may also be authorized by a variety of statutes. When the insured cancels unilaterally by a definite, unconditional request to cancel which is communicated to the insurer, cancellation is accomplished; no further act by the insurer is required to make the cancellation effective.
>
> . . .
>
> Specifically, it is not required that the insurer approve or accept the cancellation, consent thereto, or send written notice of

cancellation, although it is generally held that the insured must clearly express the intent to cancel to the insurer.

2 Couch on Ins. § 31:35 (3rd ed.).

In <u>Wygal v. Georgia Home Ins. Co.</u>, 147 S.W. 394, 395-96 (Ky. 1912) the court held that a policy of insurance was cancelled as of the time the insured placed policies in the mail addressed to the insurer's agents. "Her right to further protection under the policies was fully terminated when she placed them in the mails accompanied by her check for the earned premiums thereon, together with her letter stating she did not desire them renewed by appellees agents . . ." <u>Id.</u> at 395. Here, there is no question that Mr. Brown made a definite request to cancel the policy of insurance by signing and mailing the cancellation request form to Assured before Mrs. Brown's accident.

However, in <u>Inter Southern Life Ins. Co. v. Esenbock</u>, a case involving the cancellation of a life insurance policy, the court noted:

> The surrender of a policy, with a request that it be terminated, operates ipso facto as the cancellation, where the policy provides that the "insurance may be terminated at any time at the request of the assured." But mailing a letter inclosing policies for cancellation will effect such a cancellation only when the letter is actually received by the insured or his representative; and the policies will be binding in case of loss while the letter is in the mails."

76 S.W.2d 902, 904 (Ky. 1934) (cleaned up).

On first reading, this opinion appears to hold that a cancellation is only effective when received by the issuing insurer. On closer examination, however, it is evident that this statement is directed to instances in which mutual agreement for cancellation is required. The case observes authority holding that there are exceptions "pertaining to fire insurance policies which usually contain provisions permitting either party thereto to cancel the same on complying with

certain conditions." Id. While the present case does not involve a fire insurance policy, the policy does contain provisions permitting either party to cancel on compliance with certain conditions. As such, the undersigned concludes that Inter Southern Life Ins. does not conflict with the earlier decision in Wygal. Were this not the case, then the latter would control. Weatherstrand v. Christian Co. Fiscal Ct., No. 5:08-CV-00130-TBR, 2009 U.S. Dist. LEXIS 105500, at *10 (W.D. Ky. Nov. 12, 2009) ("Kentucky courts have held that the more recent decision is the precedent which should be followed when decisions conflict.") (citing Smith v. Overstreets's Adm'r, 81 S.W.2d 571, 572 (Ky. 1935)).

Applying Wygal, the undersigned concludes that cancellation of the policy was effective when Mr. Brown signed the cancellation request and sent it to Assured, an action predating Mrs. Brown's accident. For this reason, coverage is not available on her claim for UIM benefits.

3. Whether the Policy Release Statement estops Plaintiff from making a clam under the policy.

Both Trustgard and Assured have made note of the language in the cancellation request immediately preceding Mr. Brown's signature which provides:

> The undersigned agrees that:
> The above referenced policy is lost, destroyed or being retained
> No claims of any type will be made against the Insurance Company, its agents or its representatives, under this policy for losses which occur after the date of cancellation shown above. Any premium adjustment will be made in accordance with the terms and conditions of the policy

(DN 37-6) (punctuation as in original).

The "date of cancellation shown above" was September 17, 2015. Other than noting the existence of the Policy Release Statement, neither Assured nor Trustgard have cited authority or made any argument specifically directed to the operation of the release form language quoted above. Where a party fails to develop an argument, the Court need not address it. Sergent v.

ICG Knott County, LLC, No. 12-118-ART, 2013 U.S. Dist. LEXIS 173102, at *11 (E.D. Ky. Dec. 9, 2013). Consequently, the undersigned concludes that Assured and Trustgard have failed to demonstrate entitlement to summary judgment based on the Policy Release Statement executed by Mr. Brown.

F. Plaintiff's claims against Assured.

Plaintiff's claims against Assured are that it had "an obligation to exercise reasonable care with regard to the servicing of the Trustgard policy" and that it "breached its duties to exercise reasonable care by improperly taking actions to attempt retroactive cancellation of the insurance policy with Trustgard that insured [Plaintiff]" (DN 1-2, p. 5-6 at ¶ 13 and 14). Assured contends that liability claims against insurance agents regarding coverage typically deal with a misrepresentation or an omission regarding coverage upon which an insured relies. *See* Pan-American Life Ins. Co. v. Roethke, 30 S.W.3d 128 (Ky. 2000). Assured argues that there is no evidence that it did anything other than exactly what the Browns requested – assist them in effecting cancellation of the Trustgard policy because they did not wish to have double coverage.

Plaintiff argues that there are multiple jury questions associated with whether it was "reasonable" for Assured to send the cancellation request to Trustgard at the time it did, and whether it was acting in the best interest of the Browns or Trustgard.

"The duty an insurance agent has to his clients is a question of law. . . Under Kentucky law, there is no 'affirmative duty to advise . . . by the mere creation of an agency relationship.' . . . Instead, an insurance agent owes his client a standard duty of reasonable care." Atic Enters. v. Cottingham & Butler Ins. Servs., 690 F. App'x. 313, 316 (6th Cir. 2017) (citations omitted). Where the facts do not demonstrate that an insurance agent has assumed a duty to advise the insureds, the agent is under no duty "to protect them from themselves." Nationwide Mut. Fire

16

Ins. Co. v. Nelson, No. 11-32-ART, 2011 U.S. Dist. LEXIS 147009, at *7 (E.D. Ky. Dec. 21, 2011). In response to Assured's motion for summary judgment, Plaintiff has not cited any authority demonstrating that any of Assured's actions deviated from the standard of reasonable care. Indeed, the facts conclusively demonstrate that Assured did exactly as Mr. Brown requested in handling the policy cancellation. Even given that there is a dispute over whether Mr. Brown called Assured to report the accident, there is no evidence that Mr. Brown gave Assured instructions to withdraw the cancellation request. Moreover, the finding that the policy was cancelled when Mr. Brown executed the request moots Plaintiffs complaints about Assured's subsequent actions in forwarding the request to Trustgard.

## ORDER

**IT IS HEREBY ORDERED** that the motion of Plaintiff Guywanna Brown for summary judgment, DN 35, declaring the existence of coverage on the date of the accident is **DENIED**.

**IT IS FURTHER ORDERED** that the motion of Defendant Trustgard Insurance Company, DN 36, for a declaration that the policy was cancelled at the time of the accident is **GRANTED**.

**IT IS FURTHER ORDERED** that the motion of Defendant Assured Partners NL, LLC, DN 37, for summary judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that judgment in favor of Defendants will issue.

Copies to:   Counsel of Record

# APPENDIX A

| | |
|---|---|
| July 23, 2015 | Trustgard sends the Browns an automatic withdrawal schedule for policy premiums |
| Aug. 12, 2015 | Trustgard policy issued to the Browns (effective until Feb. 12, 2016) |
| Sept. 17, 2015 | Mr. Brown advises Assured that he wishes to cancel the policy |
| Sept. 23, 2015 | New Safeco insurance policy issued (effective until Sept. 23, 2016) |
| Sept. 25, 2015 | Assured e-mails policy cancellation request to Mr. Brown, cancellation to be effective Sept. 17, 2015 |
| Oct. 13, 2015 | Trustgard auto-debits the Brown's account for the policy premium |
| Nov. 12, 2015 | Trustgard auto-debits the Brown's account for the policy premium |
| Dec. 14, 2015 | Trustgard auto-debits the Brown's account for the policy premium |
| Dec. 30, 2015 | Assured e-mails Mr. Brown advising that it was awaiting the return of the signed cancellation request form and supplies another form |
| Jan. 6, 2016 | Trustgard mails the Browns a notice of policy renewal (effective Feb. 2, 2016-Aug. 12, 2016) |
| Jan. 13, 2016 | Trustgard auto-debits the Brown's account for the policy premium |
| Jan. 23, 2016 | Trustgard mails the Browns a withdrawal schedule for the renewal policy premiums |
| Feb. 12, 2016 | Trustgard auto-debits the Brown's account for the renewal policy premium |
| March 14, 2016 | Trustgard auto-debits the Brown's account for the renewal policy premium |
| April 14, 2016 | Trustgard auto-debits the Brown's account for the renewal policy premium |
| May 3, 2016 | Mr. Brown contacts an Assured agent to ask why he had not received a premium refund. He is advised that Assured is still awaiting his cancellation form. Assured sends another cancellation form to Mr. Brown by mail. |

| | |
|---|---|
| May 11, 2016 | Mr. Brown executes request to cancel the Trustgard policy with a cancellation date of Sept. 17, 2015 |
| May 12, 2016 | Trustgard auto-debits the Brown's account for the renewal policy premium |
| May 19, 2016 | Mrs. Brown is involved in a motor vehicle accident |
| May 19 or 20, 2016 | (Disputed)[3] Mr. Brown reports the accident to Assured |
| May 24, 2016 | Assured's agent signs the cancellation request and forwards to Trustgard |
| May 24, 2016 | Assured e-mails request to agent issuing Safeco policy requesting a copy of declarations page so that Trustgard could refund premiums to inception date of Safeco policy |
| May 26, 2016 | Trustgard advised Assured that it was reviewing the request to back-date cancellation and required verification of replacement coverage |
| May 27, 2016 | Assured received a copy of the declarations page for the Safeco policy and forwarded it to Trustgard |
| May 27, 2016 | Trustgard issued a notice of cancellation as of February 12, 2016 (inception date of the renewal policy) and mailed a premium refund check to the Browns |
| June 7, 2016 | Trustgard issued another notice of cancellation as of September 23, 2015 (inception date of the Safeco coverage) and mailed an additional premium refund check to the Browns |

---

[3] Mr. Brown has testified that he contacted Assured and reported the accident by telephone. Assured states that Mr. Brown's phone records produced in discovery do not demonstrate that a call was made to Assured during the date-range in question. Assured's witnesses dispute having been advised of the accident.